**James K. JOHNSON, Appellant,**

**v.**

**SOUTHERN MINNESOTA MACHINERY SALES, INC., Defendant,**

**Houdaille Industries, Inc., Respondent.**

**HOUDAILLE INDUSTRIES, INC., third-party, plaintiff, Respondent,**

**v.**

**GILBERTSON, INC. d/b/a Dodge Feeder Systems, third-party defendant, Respondent.**

**No. C5-88-2571.**

Court of Appeals of Minnesota.

July 25, 1989.

Review Denied Sept. 21, 1989.

Joseph F. Chase, Rochester, Mark Wal-bran, Owatonna, for James K. Johnson.

Duane E. Arndt, Minneapolis, for Houd-aille Industries, Inc.

Barbara A. Burke, Minneapolis, for Gil-bertson, Inc. d/b/a Dodge Feeder Systems.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

NIERENGARTEN, Judge.

This is a products liability case. The plaintiff, appellant James Johnson, alleged that a table saw at which he was working was defective and unreasonably dangerous, and was the direct cause of an accident in which he lost four of his fingers. Johnson sued the manufacturer of the table saw, and the distributor of the product. The defendants brought a third-party claim against Gilbertson, Inc., d/b/a Dodge Feeder Systems, Johnson's employer at the time of the accident. The distributor was ultimately released by a Pierrenger-type release.

The jury found for Johnson, determining that Dodge Feeder Systems was 80% negligent and Houdaille Industries 20% negligent, and awarded damages of $322,045.80. However, the trial court granted judgment notwithstanding the verdict (JNOV). Johnson appeals. We reverse.

## FACTS

Johnson assembled tops for wooden hog and cattle feeders without the use of power equipment for approximately three months. One day, his foreman requested Johnson to stay after his normal shift and cut a supply of top ribs for assembly into feeder tops, using a Powermatic Model No. 66 (Model 66) table saw located in Johnson's work area. The Model 66 saw was designed, built and sold by respondent Houdaille Industries (Houdaille) and had been purchased by Dodge Feeder Systems (Dodge) one or two years before Johnson began working at the company.

The saw was sold to Dodge equipped with the standard "spreader-mounted" blade guard. Respondent also manufactured an "overarm-mounted" blade guard, called the Safety–Flex guard, which was mounted on a tubular metal arm attached to the back side of the table saw, rather than mounted on the spreader or splitter, as was the standard guard. The Safety–Flex guard was an optional piece, which Dodge Feeder Systems elected not to purchase.

Cutting top ribs involves making a gradual curve in the piece of lumber. This type of cut is known as a "freehand cut" on the table saw, because no mechanical guide is used as the piece is moved through the cut. Since freehand cutting of top ribs was impossible on the Model 66 as long as the spreader-mounted blade guard was in place, the blade guard had been removed from the saw which Johnson was asked to use.

Johnson had never previously been asked to stay after his shift and perform freehand cutting of top ribs. Before Johnson's foreman left for the day he showed Johnson how to cut the ribs. Johnson, who had not used a table saw since his high school shop class more than a year earlier, inquired whether there was a blade guard on the saw, but was told that the cut couldn't be made with the spreader-mounted guard in place. After watching the foreman's demonstration, Johnson thought the job "looked safe" and believed "there was nothing to worry about."

After his shift ended, Johnson began using the Model 66 as he had been instructed. Johnson cut approximately 20 boards without incident. Then, halfway through a cut, the board he was working on began to "climb up" the saw blade. Johnson reached for the board, to push it back down, but in doing so, his left hand came in contact with the saw blade and Johnson was seriously injured, resulting in the amputation of all or parts of his left thumb and three other fingers.

Expert witnesses testified that, in their opinion, the Model 66 table saw was defective and unreasonably dangerous when it was standard-equipped with the less versatile spreader-mounted guard. These experts testified that had the Safety–Flex guard been in place, Johnson's injury would not have occurred, and that the exercise of reasonable care required that Houdaille provide the Safety–Flex guard, with its added safety features, as standard

equipment on its table saw. Although a witness for Houdaille acknowledged that the manufacturer had foreseen that the Model 66 might be used for freehand cutting, the witness testified that Houdaille had clearly warned against such use of its product.

At the close of Johnson's evidence, Houdaille moved to dismiss on the grounds that Johnson primarily assumed the risk of harm. The trial court denied the motion at that time. When the court submitted a special verdict to the jury at the end of the trial, it directed findings that 1) Johnson's employer, Dodge Feeder Systems failed to exercise reasonable care for Johnson's safety, and that 2) such failure was a direct cause of Johnson's injury. The jury found for Johnson, apportioning Houdaille 20% of the negligence, and Dodge Feeder Systems 80%.

Upon Houdaille's post-trial motions, the court ordered a judgment notwithstanding the verdict (JNOV) on the findings:

(1) That Plaintiff was negligent as a matter of law and that that negligence preponderates over the fault of Houdaille Industries, Inc. as a matter of law;

(2) That the negligence of Dodge Feeder Systems, Inc., as a matter of law, was a superseding, intervening cause of Plaintiff's harm;

(3) That Plaintiff, as a matter of law, undertook to assume the risk of harm on the basis of primary assumption of risk;

(4) That as a matter of law Plaintiff misused the product of Houdaille Industries, Inc. and that as a direct result of such misuse, he sustained injury.

## ISSUES

I. Does the evidence support the jury's finding that the defective condition of the table saw was a direct cause of appellant's injury, and that the fault of appellant's employer was not a superseding, intervening cause?

II. Does the evidence support the jury's finding that appellant used reasonable care for his own safety?

III. Did appellant primarily assume the risk of harm?

IV. Is respondent absolved of liability because the saw was used in a manner not intended?

## ANALYSIS

1. *Standard of review*

■ The granting of a judgment notwithstanding the jury verdict is a pure question of law. The standard upon review is the same as that guiding the trial court.

A motion for judgment non obstante accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party, and if the application of this rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied.

*Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979) (quoting *Cofran v. Swanman*, 225 Minn. 40, 42, 29 N.W.2d 448, 450 (1947)).

2. *Causation*

Dodge's negligence in directing Johnson to perform a freehand cut which necessitated removal of the spreader-mounted blade guard, as a direct cause, does not also automatically become a superseding cause unless four elements exist:

(1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer.

*Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn.1979) (quoting *Kroeger v. Lee*, 270 Minn. 75, 78, 132 N.W.2d 727, 729 (1965)).

Dodge's removal of the blade guard would not constitute a superseding cause if it were a reasonably foreseeable act or if Johnson's injury were brought about by the manufacturer's original negligence in

not standard-equipping the Model 66 with an overarm hood blade guard. The critical question is whether Johnson would have been injured if the Safety–Flex guard had been installed. *See Keenan v. Hydra–Mac, Inc.*, 422 N.W.2d 741, 745 (Minn.Ct. App.1988) (Although operator of skid-steer loader was working in violation of the Child Labor Standards Act, operator would not have been injured if the loader were designed properly or fitted with a seat control interlock device), *rev'd on other grounds*, 434 N.W.2d 463 (Minn.1989).

### 3. *Foreseeability*

■ According to expert witnesses, it was reasonably foreseeable that freehand cutting would be done on the Model 66 table saw despite the fact that the spreader-mounted guard would have to be removed before cutting could be done. Houdaille's own witness indicated that Houdaille was aware that its table saw would be used without the spreader-mounted guard in place. An employee of Houdaille testified that "in reviewing products and reviewing the hazards associated with the products" his company took a multi-step approach toward safeguarding against the hazards. The first step was to try to eliminate the hazard. The second step was to try to reduce the possibility of encountering the hazard. The third step involved issuing warnings for hazards that could not be eliminated, and the fourth step involved training or improving the skill of the operators of products that could not be safeguarded any further. The jury evidently found that Houdaille should have gone beyond the warning stage and either reduced or eliminated the possibility of harm from the table saw by equipping the saw with the more flexible blade guard. The testimony of the expert witnesses for both Johnson and Houdaille supports the jury's finding that Houdaille reasonably foresaw that the Model 66 would be used without the blade guard in place.

### 4. *Original negligence*

■ Johnson also argues that any negligence by Dodge was absorbed by Houdaille's original negligence in not standard-equipping the Model 66 table saw with a blade guard that would allow freehand cuts to be made without having to remove the guard. Under products liability law:

[A] manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, *as well as an unintended yet reasonably foreseeable use.*

*Holm v. Sponco Manufacturing, Inc.*, 324 N.W.2d 207, 212 (Minn.1982) (quoting *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 385–86, 348 N.E.2d 571, 577–78, 384 N.Y.S.2d 115, 120–21 (1976) (emphasis added).

■ Reasonable care is determined by "a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Id.* The jury presumably performed this balancing test and found that Houdaille breached its duty to avoid the risk of harm for Johnson's "unintended yet reasonably foreseeable use" of the table saw for freehand cutting. The evidence shows that the Safety–Flex guard was available on the market and was not that much more expensive than the spreader-mounted guard. In addition, Johnson vigorously asserts that the testimonial and videotape evidence showed that the Safety–Flex guard *would have* prevented a hand from slipping onto the blade during freehand cutting, in the absence of spreader and anti-kickback devices. The jury evidently concluded that Houdaille had a duty to standard-equip the Model 66 table saw with an overarm, Safety–Flex blade guard and that its negligence in not so equipping the saw was a direct and original cause of Johnson's injury that was not superseded by Dodge's negligence.

It should be pointed out that the court originally refused to decide the issue of Dodge's superseding negligence as a matter of law, but gave it to the jury with full and proper instructions. The testimony of

the expert witnesses supports the findings of the jury.

In reviewing a JNOV, this court is to accept the evidence in the light most favorable to the verdict, and when there is a reasonable basis for the verdict it should be reinstated. *Tennant Co. v. Advance Machine Co.*, 355 N.W.2d 720, 723 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Jan. 11, 1985). The jury had a reasonable basis for its verdict, and the trial court's decision to grant Houdaille's motion for JNOV, on the basis of Dodge's superseding negligence, is reversed.

### 5. *Appellant's negligence*

■ Houdaille also moved for JNOV on the grounds that Johnson was negligent as a matter of law and that his negligence was a direct cause of his injury and that Johnson had no cause of action because he primarily assumed the risk of injury. The trial court found the evidence "overwhelming" that Johnson primarily assumed the risk of injury and harm, and with knowledge that he was misusing the saw, still undertook to do freehand cutting so as to abrogate "any concept of duty of Houdaille." We disagree.

Johnson contends he operated the table saw in precisely the manner in which he had been instructed by his foreman. Although Johnson exercised reasonable care for his own safety, he concedes he did not comprehend "how, or in what manner, or the number of ways, that his hand could come into contact with the blade *despite* his exercise of care." Johnson testified that he had not operated a table saw since his high school shop class, a year earlier, and that he then only operated the table saw sporadically.

In *Peek v. Ostrom*, 107 Minn. 488, 120 N.W. 1084 (1909), a 20-year old was injured by a saw blade while attempting to clean out a sawdust chute. The supreme court noted, in response to the question whether the young man assumed the risk, that:

> [H]e only assumed the risk in so far as he appreciated the danger. * * * While

any reasonable person might know that his hand might be cut if it came in contact with a revolving saw, yet an experienced person might not appreciate the danger of getting his hand in contact with the saw while engaged in doing the work in that manner.

*Id.* at 490, 120 N.W. at 1085.

Considering Johnson was only 18 years old at the time of the accident, two years younger than the man the *Peek* court found to be "a young man of very limited experience in and about sawmills, and with less than a day's experience upon this particular saw," *id.*, and since Johnson did nothing more than undertake the same kind of freehand cutting he had seen his shop teacher and his foreman do, it cannot be said Johnson primarily assumed the risk of injury. The case was submitted to the jury with proper instructions. The jury found Johnson exercised reasonable care for his own safety. The jury verdict for Johnson cannot be set aside. *See id.* at 491, 120 N.W. at 1085.

### DECISION

The trial court's judgment notwithstanding the verdict is reversed.

Reversed.