## Leo PIOTROWSKI; Katherine Piotrowski, Plaintiffs– Appellees,

### v.

## SOUTHWORTH PRODUCTS CORPORATION, Defendant– Appellant.

### No. 93–1494.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1993.

Decided Feb. 1, 1994.

Rehearing Denied Feb. 24, 1994.

Order Vacating Denial of Rehearing March 7, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 7, 1994.

---

Richard G. Mark, Minneapolis, MN, argued (Kathleen Erickson DeGiorno and Scott

750

G. Bowman on the brief), for defendant-appellant.

Victor A. Kreuziger, Edina, MN, argued, for plaintiffs-appellees.

Before BEAM, Circuit Judge, LAY, Senior Circuit Judge, and BOGUE,* Senior District Judge.

LAY, Senior Circuit Judge.

Leo Piotrowski brought this diversity action against Southworth Products Corp. ("Southworth") to recover for personal injuries he sustained while using a product manufactured by Southworth. The case was submitted to a jury on both strict liability and breach of implied warranty of fitness theories. The jury found only that Southworth had breached its implied warranty of fitness. The district court[1] entered judgment on the jury verdict, from which Southworth appeals. We affirm.

## I.

Piotrowski was an employee of S.B. Foot Tanning Company (the "Tanning Co.") where he worked as a setting machine operator, or setter. The Tanning Co. processes leather products for commercial use. As a setter, Piotrowski worked on a machine that wrings out wet hides as part of the tanning process. Setters use hydraulic lift tables to lift pallets of wet animal hides from floor level to a maximum height of three feet above the floor in order to load the hides into setting machines. The lift tables are set in pits so that the tabletops are flush with the floor when in the down position.

The Tanning Co. bought three modified lift tables from Southworth. Before purchase, Southworth's sales manager was shown where the lifts would be used and was informed that the lifts would be used in a very wet area where chemicals would be present. The Tanning Co. bought the model which the sales manager recommended. Each lift table had two pairs of "scissor legs" that came together and spread apart to make the table

move up and down. The legs moved on roller feet. The roller wheels were supposed to be self lubricated and not susceptible to corrosion. From the beginning, Tanning Co. employees had problems with the lift tables sticking on their way down or descending too slowly. Piotrowski claimed that the wheels were rusting and sticking. Southworth asserted that the lift tables were sticking because of debris build-up in the base frame roller tracks.

To get the wheels rolling so that the lift tables would descend, the setters would slap a pallet on top of the lift, stand on it or stomp a foot on it. If a setter was unable to get the table to descend, a maintenance person would be called, and upon spraying lubricant on the wheels, they would roll again. Approximately seven months after the lift tables were installed, Piotrowski stood or jumped on one of the wet lift tables, fell from the table, and as a result is permanently and totally disabled. Shortly after the accident (although Southworth claims it had not yet been informed of the accident), the Tanning Co. received replacement roller feet of a different design and the lift tables then worked properly.

Piotrowski sued Southworth for his injuries under theories of strict liability for defective design, negligence, and breach of implied warranty of fitness. His wife, Katherine Piotrowski, sued Southworth for loss of consortium. The district court merged the negligence claim into the strict liability claim and submitted by special verdict both the strict liability and breach of implied warranty of fitness claims to the jury. The jury denied liability under the claim of strict liability but held that Southworth had breached its implied warranty of fitness. On this basis, the district court entered judgment against Southworth for $453,797.00.

The district court denied Southworth's motions for judgment as a matter of law and for a new trial. On appeal, Southworth claims that the district court erred in: submitting the case to the jury on both strict liability

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

and breach of implied warranty of fitness theories; submitting the breach of implied warranty of fitness case to the jury; refusing to grant its motion for judgment as a matter of law based on Piotrowski's assumption of risk; failing to instruct the jury on assumption of risk and the appropriate definition of fault; and admitting certain opinion testimony,. Southworth also asserts that the damages awarded by the jury were speculative and against the clear weight of the evidence.

## II.

### A. Strict Liability and Breach of Implied Warranty of Fitness Theories

■■■ Southworth contends that the district court erred in submitting the case to the jury on both strict liability and breach of implied warranty of fitness theories. Southworth asserts that the district court failed to recognize that these two theories merge under Minnesota law. Where design defect cases are involved, Minnesota merges the theories of strict liability and negligence. *See Bilotta v. Kelley Co.*, 346 N.W.2d 616, 622–23 (Minn.1984); *see also* 4 Minnesota Practice, CIV. JIG 101 & 117 (3d ed. 1986) [hereinafter CIV. JIG]. The Minnesota Supreme Court has not, however, merged the theory of implied warranty of fitness for a particular purpose into the theories of strict liability and negligence.

There are two types of implied warranties: merchantability and fitness. The implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." Minn.Stat. § 336.2–314(2)(c) (1992). This is analogous to the theory of strict liability for design defect, which refers to harm that results when a product "is put to its intended use." CIV. JIG 117. It may be that under Minnesota law, the theory of implied warranty of merchantability merges with that of strict liability. *See id.* 117 Authorities at 86.

The implied warranty of fitness, however, is distinct from both the implied warranty of merchantability and strict liability. The implied warranty of fitness addresses the "particular purpose for which the goods are required." Minn.Stat. § 336.2–315 (1992). It

is similar to an express warranty, where statements or representations may provide grounds for imposing liability even if the product is not defective in the sense of a design defect. *See* CIV. JIG 117 Authorities at 86. Where the evidence so justifies, a court may submit claims of breach of express warranty and of design defect to a jury. *See Bilotta*, 346 N.W.2d at 625; *see also* CIV. JIG 117 Authorities at 87 (reasoning that although in design defect cases it is inappropriate to submit case to jury on both strict liability and breach of implied warranty of merchantability theories, it may be appropriate to submit on strict liability and express warranty or implied warranty of fitness theories). An implied warranty of fitness is akin to an express warranty, and as such does not merge with strict liability.

Southworth asserts that since the *Bilotta* decision, Minnesota courts have merged strict liability, negligence and breach of implied warranty theories. The *Bilotta* court did not discuss the implied warranty of fitness theory; it focused primarily on strict liability and negligence in design defect and failure to warn situations. *See Bilotta*, 346 N.W.2d at 621–23.

One of the cases cited by Southworth for the proposition that all three theories have merged simply reiterates that under *Bilotta*, strict liability and negligence in design defect and failure to warn actions merge. *See Tews v. Husqvarna, Inc.*, 390 N.W.2d 363, 368 (Minn.Ct.App.1986). The *Tews* court makes no mention of the implied warranty of fitness theory. Two other Minnesota Court of Appeals cases do specifically cite *Bilotta* for the proposition that strict liability, negligence, and implied warranty theories have merged into a single theory of products liability. *See Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 356 (Minn.Ct.App.1991); *Gross ex rel. Gross v. Running*, 403 N.W.2d 243, 245 (Minn.Ct.App.1987). The *Bilotta* court did not address the theory of implied warranty, however, and thus *Westbrock* and *Gross* do not appear to be proper readings of *Bilotta*, at least insofar as the implied warranty of fitness theory is concerned. Therefore, we find it was not erroneous for the district court to submit the case to the jury on both

strict liability and breach of implied warranty of fitness theories.

## B. Sufficiency of the Evidence for Breach of Implied Warranty of Fitness Claim

Southworth asserts that the district court erred in submitting to the jury the breach of implied warranty of fitness claim because there was not sufficient evidence presented at trial to create an issue of fact for the jury. To have an implied warranty that goods will be fit for a particular purpose, the seller must, at the time of contracting, know of a particular purpose for which the goods are required and know that "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Minn.Stat. § 336.2–315.

We find sufficient evidence in the record to support the claim of breach of implied warranty of fitness for a particular purpose. Southworth's sales manager met with Piotrowski's employer before the lifts were purchased. The sales manager was shown where the lifts would be used, was told how the lifts would be used, and was aware that it was a wet environment. The sales manager then recommended a specific model, which was purchased by Piotrowski's employer. Evidence was presented at trial showing that the wheels were corroded and rusting and were not adequately lubricated in a wet environment, thereby causing the wheels to stick and preventing the proper operation of the lift table. Thus, Piotrowski alleged sufficient facts to support submitting to the jury his claim of breach of implied warranty of fitness.

## C. Assumption of Risk

Southworth contends that the district court erred in refusing to grant Southworth judgment as a matter of law based on Piotrowski's primary assumption of risk.[2] Under Minnesota law, there are two types of assumption of risk: primary and secondary.

The doctrine of primary assumption of risk applies " 'only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to these risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent.' " *Wagner v. Thomas J. Obert Enters.*, 396 N.W.2d 223, 226 (Minn.1986) (quoting *Olson v. Hansen*, 299 Minn. 39, 216 N.W.2d 124, 127 (1974)); *see also Armstrong v. Mailand*, 284 N.W.2d 343, 351 (Minn.1979). In cases where the defendant owes a duty to the plaintiff, primary assumption of risk is inapplicable. *See Thompson v. Hill*, 366 N.W.2d 628, 631 (Minn.Ct.App.1985).

Secondary assumption of risk is a phase of contributory negligence and has been merged into contributory negligence. *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826, 827 (1971). Where secondary assumption of risk is implicated, the question for the trier of fact is whether the "plaintiff was, under the circumstances, negligent in regard to his own safety." *Id.* at 828. As the Minnesota Supreme Court has explained:

"The mere fact that plaintiff would, in the exercise of ordinary care, have known or appreciated the danger is not sufficient. Where the facts are such that plaintiff must have had knowledge, the situation is equivalent to actual knowledge; but where it merely appears that he should or could have discovered the danger, the defense is contributory negligence and not assumption of risk."

*Beckman v. V.J.M. Enters., Inc.*, 269 N.W.2d 37, 39 (Minn.1978) (quoting *Coenen v. Buckman Building Corp.*, 278 Minn. 193, 153 N.W.2d 329, 338 (1967)). " 'Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it. It differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice.' " *Id.* (quoting *Coenen*, 153 N.W.2d at 338 (quoting *Schrad-*

2. Southworth also argues that the district court erroneously defined "fault" in its instructions. We find this contention spurious. Southworth's position is, in essence, that the court failed to include primary assumption of risk in the comparative fault instruction. As is discussed in this section, the district court properly found that secondary assumption of risk was implicated and it thus would have been improper for the district court to instruct on primary assumption of risk.

*er v. Kriesel,* 232 Minn. 238, 45 N.W.2d 395, 400 (1950))).

■ Although primary assumption of risk bars a plaintiff from recovering, secondary assumption of risk does not. As the Minnesota Supreme Court has reasoned, "an injured plaintiff's involuntary or otherwise not unreasonable assumption of risk should not exonerate a defendant from his causal negligence." *Springrose,* 192 N.W.2d at 827 (citing *Peterson v. W.T. Rawleigh Co.,* 274 Minn. 495, 144 N.W.2d 555, 558 (1966)); *see generally Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679, 683–84 (1977) (not erroneous for trial court to refuse to instruct on assumption of risk in action by injured employee against manufacturer of industrial press, where evidence did not show that employee voluntarily assumed a known risk).

The district court in the instant case properly reasoned that this case involves secondary, not primary, assumption of risk. Piotrowski did not have actual knowledge of a known risk and he did not make the choice to chance the risk rather than avoid it. Piotrowski and other employees had similarly stood or stomped on the lift table without incident for seven months. The lift table, at the time of Piotrowski's fall, was one and a half feet above floor level, and the tabletop was large. Piotrowski knew that the tabletop was wet, but he regularly wore boots with heavy tread that provided traction. Under Minnesota's definition of assumption of risk, secondary assumption of risk was implicated and the issue was properly submitted to the jury under contributory negligence and not primary assumption of risk. In apportioning fault, the jury found that Piotrowski was ten percent at fault, Southworth was twenty-two percent at fault, and the Tannery Co. was sixty-eight percent at fault.

**3.** The Federal Rules of Evidence provide that expert witnesses may give opinion evidence even without hypothetical questions. *See* Fed.R.Evid. 702. This allows for the shortening of trials and emphasizes counsel's freedom to cross examine an expert concerning all of the facts that the expert relied upon or did not know.

**4.** The jury arrived at the sum of $469,218.98 in the following manner:

### D. Admission of Opinion Testimony

■ Southworth urges that the district court erred in admitting the testimony of Piotrowski's treating physician. According to Southworth, a hypothetical question posed to the doctor did not include all of the facts regarding Piotrowski's medical history. The form of a hypothetical question is left largely to the trial court's discretion. *Iconco v. Jensen Constr. Co.,* 622 F.2d 1291, 1301 (8th Cir.1980). A hypothetical question that omits a " 'material fact essential to the formation of a rational opinion is ... incompetent.' " *Id.* (citation omitted).

The fact that the hypothetical question posed to Piotrowski's physician did not include a reference to Piotrowski's visit to a chiropractor on one or two occasions approximately four years prior to this accident is not a material omission. We find that the hypothetical, taken as a whole, fairly and accurately presented Piotrowski's condition. Furthermore, Southworth introduced its own medical testimony, and the jury was at liberty to disregard whatever testimony it did not find credible.[3] This is a question best left to the jury. We find no prejudicial error.

### E. Damages Awarded by Jury

■ Southworth asserts that the evidence does not support the damages awarded by the jury. The jury awarded Piotrowski $469,218.98 in damages,[4] and awarded Katherine Piotrowski $35,000 for loss of consortium. Applying Minnesota's comparative fault statute, *see* Minnesota Statute § 604.01 (1992), the district court entered judgment in the amount of $422,297.00 in favor of Piotrowski, and $31,500.00 in favor of Katherine Piotrowski.

■ The only sum awarded which could potentially be considered excessive is

| | |
|---|---|
| Past loss of earnings | $ 52,500.00 |
| Future loss of earnings | 255,000.00 |
| Past medical expenses | 16,718.98 |
| Future medical expenses | 40,000.00 |
| Past pain and suffering | 20,000.00 |
| Future pain and suffering | 85,000.00 |
| | $469,218.98 |

the award for future loss of earnings, in the amount of $255,000.00. As an appellate court, we have a very narrow scope of review over a damage award, and may not reverse except for a manifest abuse of discretion. *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986). In considering the excessiveness of a verdict, we are guided by the law of the forum state. *Id.* Under Minnesota law, which applies in this diversity action, an appellate court will not interfere with a jury's award of damages unless there is "plain injustice or a monstrous or shocking result." *Schoenecke v. Ronningen*, 315 N.W.2d 612, 614 (Minn.1982).

Although Southworth contends that Piotrowski is not totally disabled and the loss of future earnings award is excessive, we believe that there is ample evidence in the record to justify the damages awarded for loss of future earnings. The jury and a competent trial judge were in the best position to observe the witnesses, their credibility, and the overall evidence. Piotrowski's injuries of multiple herniated discs and aggravation of a preexisting asymptomatic back condition clearly justify a trier of fact awarding the damages that it did. At the time of the accident, Piotrowski was forty-eight years old and he had an annual income of $20,500.00. Piotrowski was considered a good employee and was a candidate for higher paying jobs. He could expect four and a half percent annual pay increases. Without considering any pay increases, a straight line loss of earnings for seventeen years, his remaining work expectancy, would be $348,500.00. The sum awarded of $225,000.00 indicates the jury's appraisal of Piotrowski's future work potential. The evidence further indicated that Piotrowski will need surgery in the future and that his back condition will not improve and will probably worsen with age. Under the circumstances, although it might be argued that the award is at the high end of what the damages should be, the jury did not arrive at a monstrous or shocking result and we find no basis for an appellate court to intervene.

## III.

Based on the foregoing, we affirm the judgment of the district court.

### ORDER

March 7, 1994

On the court's own motion, the February 24, 1994 order denying appellants petition for rehearing by the panel is vacated pending disposition of appellant's suggestion for rehearing en banc.