66 F.3d 173
 Prod.Liab.Rep. (CCH) P 14,340
T.H.S. NORTHSTAR ASSOCIATES, Plaintiff-Appellee/Cross-Appellant
v.
W.R. GRACE AND COMPANY, Defendant-Appellant/Cross-Appellee.
 Nos. 94-2092, 94-2194.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1995.
Decided Sept. 25, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 21, 1995.
 
 Allen W. Hinderacker, Minneapolis, MN, argued (Hugh V. Plunkett, III, Donald M. Lewis, and Robert K. Shelquist, on the brief), for appellant.
 Kenneth B. McClain, Independence, MO, argued (Floyd Siefferman, Minneapolis, MN, on the brief), for appellee.
 Before FAGG, LOKEN, and MURPHY, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 In 1986, T.H.S. Northstar Associates ("THS") purchased the Northstar Center in downtown Minneapolis. After completing the purchase, THS discovered ceiling tiles and other surfaces contaminated with asbestos fibers. THS sued W.R. Grace & Co., the manufacturer of Monokote 3, an asbestos-laden material used in fireproofing the Northstar Center, to recover the costs of asbestos abatement and removal. After a six-week trial, the jury awarded THS $6,240,000 in compensatory damages. Both sides appeal. We conclude that the district court properly applied Minnesota law in submitting THS's claims to the jury but erred in later submitting an interrogatory to clarify the jury's facially valid verdict. We remand for recalculation of damages but otherwise affirm.
 
 
 2
 Two of THS's claims are at issue. First, THS claims that Grace is strictly liable for design defects because Monokote as applied was inherently unsafe for use in an office building. Grace denies that Monokote was defectively designed, arguing that it is a cementitious product unlikely to release asbestos fibers if properly maintained. Second, THS claims that Grace breached a continuing duty to warn when it published false information about asbestos contamination and Monokote to discourage expensive removal and abatement programs. Grace denies that it had or breached a continuing duty to warn subsequent purchasers such as THS. Alternatively, Grace argues that THS's damages are its own fault because THS was fully aware when it purchased the Northstar Center that the building was fireproofed with Monokote, which contains asbestos, and that asbestos fibers are a health hazard in office buildings. THS replies that its pre-purchase inspections revealed no serious asbestos contamination, so THS believed it could safely maintain the asbestos in place. When it discovered substantial asbestos contamination after the purchase, however, THS was forced to undertake costly abatement and removal.
 
 
 3
 The jury found Grace liable on the design defect and duty to warn claims but also found THS forty percent at fault. On appeal, Grace argues (1) it is entitled to judgment as a matter of Minnesota law because THS purchased the Northstar Center with full knowledge of the asbestos risk; (2) the district court erred in refusing to reduce the jury's compensatory damage award by THS's forty percent comparative fault; (3) erroneous instructions on the duty to warn; and (4) erroneous evidentiary rulings. On its cross-appeal, THS challenges (1) the district court's ruling that a supervening decision of the Minnesota Supreme Court precludes the jury's award of $13,500,000 in punitive damages; (2) the district court's calculation of prejudgment interest; and (3) the finding of comparative fault.
 
 I.
 
 4
 Grace argues that THS, a sophisticated real estate investor, may not recover because it is a "subsequent purchaser with notice" of the asbestos hazard. Grace relies primarily on Arden Hills North Homes Ass'n v. Pemtom, Inc., 475 N.W.2d 495 (Minn.App.1991), aff'd as modified, 505 N.W.2d 50 (Minn.1993). In Arden Hills, an association of subdivision homeowners sued the developer for negligence resulting in premature deterioration of the homes' siding. Though the developer was held liable, recovery was denied to subsequent home purchasers who purchased with knowledge of the defective condition. Grace argues that THS knew or should have known all the risks associated with Monokote and asbestos and therefore its claims are barred under Arden Hills.
 
 
 5
 The legal significance of being a "purchaser with notice" depends upon the cause of action at issue. This fact is often relevant in resolving contract and property disputes. For example, a purchaser who buys goods with notice of a third party's rights takes the goods subject to those rights, even if the seller is a merchant dealing in the ordinary course of business. See Minn.Stat. Secs. 336.1-201(9), 336.2-403(2). A purchaser with notice of an unrecorded conveyance is not entitled to the protections of the Minnesota recording act. See Minn.Stat. Sec. 507.34. And a purchaser with actual knowledge of an undisclosed latent defect is not entitled to the contractual remedy of rescission. See Beck v. Northwestern Fed. Sav. & Loan Ass'n, 206 Minn. 125, 288 N.W. 217, 220 (1939).
 
 
 6
 In this case, Grace contends that THS, a purchaser with notice of a risk, may not sue Grace, the third party who tortiously created that risk. As a careful reading of Arden Hills makes clear, tort law takes this type of notice into account through the doctrine of assumption of risk. Grace asserts, in essence, that THS assumed the risk of asbestos contamination when it purchased the Northstar Center knowing that its fireproofing contained asbestos. Assumption of risk was historically a complete defense, but Minnesota law has for the most part replaced the traditional defense with a statutory comparative fault regime. See Minn.Stat. Sec. 604.01, subd. 1a (" 'Fault' includes ... unreasonable assumption of risk not constituting an express consent or primary assumption of risk"). The district court submitted comparative fault to the jury, expressly defining THS's fault to include its pre-purchase knowledge of the risk.[1] Thus, Grace's subsequent-purchaser-with-notice theory is nothing more than an attack on the district court's application of the Minnesota comparative fault statute. Unless THS's alleged notice is a form of assumption of risk excluded from the comparative fault statute, that attack must fail.
 
 
 7
 The comparative fault statute excludes "express consent or primary assumption of the risk." Thus, consent and primary assumption of risk remain complete defenses. The essential element of primary assumption of risk is that the plaintiff consciously and voluntarily agreed that the defendant would not have a duty to protect against a particular danger inherent in their dealing. The defendant pleading primary assumption of the risk must demonstrate that by proceeding with the activity, the plaintiff intended to relieve the defendant of any duty to protect against a risk that was inherent, obvious, and unavoidable. See Henkel v. Holm, 411 N.W.2d 1 (Minn.App.1987) (fighting); Armstrong v. Mailand, 284 N.W.2d 343 (Minn.1979) (firefighting). "The classes of cases involving an implied primary assumption of risk are not many." Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826, 827 (1971). Primary assumption of risk is implied mainly in the context of sporting events and other naturally risky activities. See Wagner v. Thomas J. Obert Enterprises, 396 N.W.2d 223, 226 (Minn.1986).
 
 
 8
 Grace fell far short of proving express consent or primary assumption of risk by THS. Grace was a third party to THS's purchase of the Northstar Center. While asbestos contamination was a known risk in buying the building, that risk was not inherent to the transaction. "It is not every deliberate encountering of a known danger which is reasonably to be interpreted as evidence of consent." Iepson v. Noren, 308 N.W.2d 812, 815 (Minn.1981). Thus, this was a case of secondary assumption of risk, which is covered by Minnesota's comparative fault statute and which therefore relieves Grace of liability only to the extent the jury finds comparative fault in THS's assumption of the risk. See Olson v. Hansen, 299 Minn. 39, 216 N.W.2d 124 (1974). The district court did not err in rejecting Grace's purported complete defense and in declining to instruct the jury on primary assumption of risk.[2]
 
 
 9
 The jury found THS only forty percent at fault. Though Grace accuses THS of "full awareness and acceptance of any risks," it does not attack this comparative fault finding as clearly erroneous. In our view, the trial evidence viewed most favorably to THS clearly supports the jury's apportionment of fault. For example, it is undisputed that THS did not know before the purchase that asbestos fibers had been released within the Northstar Center. The distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical. Indeed, no cause of action exists until there has been a substantial release. See MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1278-79 (8th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 89, 130 L.Ed.2d 40 (1994); 80 S. 8th St. Ltd. Partnership v. Carey-Canada, Inc., 486 N.W.2d 393 (Minn.), modified, 492 N.W.2d 256 (Minn.1992). In these circumstances, the jury's comparative fault finding of some assumption of risk is not a complete bar to THS's recovery.
 
 II.
 
 10
 Grace next challenges the district court's jury instruction and special interrogatory on THS's failure to warn claim. The instruction stated in relevant part:
 
 
 11
 [I]f a manufacturer learns that a previously distributed product poses a danger to users, it must give additional warnings or instructions that will enable users to make informed decisions and use the product safely.... A manufacturer has no duty to warn, however, if the user is or should be fully aware of all of the dangers inherent in the product, but past experience or familiarity with a product does not necessarily alert a user to all of the dangers associated with the product.
 
 
 12
 The special interrogatory asked the jury, "Did Grace both have and breach a duty to adequately warn or instruct Northstar about the hazards associated with Monokote 3?"
 
 
 13
 Grace first argues that the special interrogatory, by asking if Grace had a duty to warn, violated the principle that the existence of that duty is a question of law for the court. See Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn.1986). However, Grace waived this issue by urging at the instruction conference:
 
 
 14
 Grace believes that there should be an interrogatory that inquires whether or not there was a duty, specifically whether or not [THS] was a knowledgeable user.... [T]he jury has to find that there was a duty. And if there was a duty, whether or not it was breached.
 
 
 15
 Moreover, the court's instruction properly resolved the legal question by defining when a manufacturer has a continuing duty to warn. Consistent with Minnesota law, it left fact issues for the jury, such as breach of the duty and whether THS was a user who "knew or should have known" of the danger. See Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826 (Minn.1988), cert. denied, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); Balder v. Haley, 399 N.W.2d 77, 81 (Minn.1987); Willmar Poultry Co. v. Carus Chem. Co., 378 N.W.2d 830, 835 (Minn.Ct.App.1985).[3]
 
 
 16
 Grace next argues that the evidence in this case does not establish "special circumstances" imposing a continuing duty to warn under Minnesota law. In Hodder, the Minnesota Supreme Court imposed such a duty based upon the following facts: (1) the manufacturer insisted its product was safe if used properly; (2) it became evident to the manufacturer over time that great care was required in the handling and servicing of the product, or serious injury would occur; and (3) the manufacturer continued in the business of selling related products and undertook a duty to warn users of post-sale hazards. 426 N.W.2d at 833; see Ramstad v. Lear Siegler Divers. Holdings Corp., 836 F.Supp. 1511, 1517 (D.Minn.1993). We agree with the district court that the evidence in this case justified submitting the continuing-duty-to-warn issue to the jury. In particular, Grace's pamphlets, letters, and extensive publicity discussing the risks of asbestos-containing materials and purporting to advise building owners on how to manage that risk raise a jury issue under Hodder whether to impose a continuing legal duty to warn.
 
 III.
 
 17
 We agree with Grace's next contention, that the district court erred in increasing the jury's compensatory damage award by forty percent based upon its answer to a supplemental interrogatory. The jury fixed compensatory damages at $6,240,000 and found THS forty percent at fault. Although there was no inconsistency between the verdict and the jury's interrogatory answers, THS moved for an additional interrogatory asking whether the jury had reduced its damage award based upon THS's comparative fault. The district court agreed and submitted a supplemental interrogatory asking the jury whether its award was "intended to reflect your finding that [THS] was 40 percent negligent." The jury answered "yes" and for that reason the district court refused to reduce the $6,240,000 damage award by THS's forty percent comparative fault.[4]
 
 
 18
 The district court erred in submitting this post-verdict interrogatory. In Chicago, R.I. & P.R.R. v. Speth, 404 F.2d 291 (8th Cir.1968), we held that a similar interrogatory intended to clarify whether the verdict included a deduction for plaintiff's contributory negligence was reversible error:
 
 
 19
 [T]he court's questioning of the jury regarding the amount of their verdict, even on a special verdict form is impermissible.... [Unless] the verdict on its face shows a clear disregard for the court's instructions, the jury may not be asked to correct it.... [A] trial judge may not have the same jury reconsider what appears to him (or what he might determine upon general inquiry) to be a miscalculation of general damages.
 
 
 20
 404 F.2d at 295 (citation and footnote omitted). Similarly, in Gander v. FMC Corp., 892 F.2d 1373, 1379 (8th Cir.), cert. denied, 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990), we held:
 
 
 21
 [G]iven correct instruction on the law and no clear disregard for that instruction on the face of the verdict, a jury verdict must remain immune from questioning by the district court and from speculation by an appellate court that the verdict may be based on a misunderstanding of the law.
 
 
 22
 The district court distinguished Speth because here the original instructions did not tell the jury to disregard THS's fault in fixing compensatory damages. However, neither party objected to that omission. Instead, THS's counsel advised the jury in closing argument not to consider THS's fault in fixing the amount of damages. Thus, the jury was properly instructed and its verdict was internally consistent. Compare Williams v. KETV Television, Inc., 26 F.3d 1439, 1442-43 (8th Cir.1994), discussing the trial court's options when the jury returns an inconsistent verdict. The district court found that the compensatory damage award was within the range of reason. In these circumstances, the rule of Speth is controlling, and the jury's answer to the special interrogatory must be disregarded in determining the amount of the judgment.
 
 IV.
 
 23
 The remaining issues raised by both parties are without merit. Grace argues that various evidentiary rulings were reversible error. The district court has broad discretion in admitting and excluding evidence, and we reverse only for clear and prejudicial abuse of that discretion. The challenged evidence must be "of a critical nature, so that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." King v. Ahrens, 16 F.3d 265, 268 (8th Cir.1994). Grace challenges rulings dealing with experts' opinions and studies, investments by THS affiliates, and abatement cost evidence. In the context of this lengthy trial, these issues fall far short of the requisite prejudice threshold.[5]
 
 
 24
 On its cross-appeal, THS first argues that the district court erred in submitting assumption of risk to the jury because there was insufficient evidence that THS appreciated a known risk. This argument flies in the face of the evidence at trial, and we reject it out of hand. The district court properly submitted this issue as part of its comparative fault instruction.
 
 
 25
 THS next argues that the district court erred in not awarding prejudgment interest on the future damages portion of the jury's compensatory award. The court's decision was well-grounded in the facts and in Minnesota law. See Skifstrom v. City of Coon Rapids, 524 N.W.2d 294, 296 n. 1 (Minn.App.1994), review granted (Minn. Feb. 3, 1995). Moreover, Grace has asserted, and THS does not deny, that THS's challenge to the calculation of prejudgment interest under Minn.Stat. Sec. 549.09 is mooted by our decision that the compensatory damage award must be reduced by THS's percentage of fault.
 
 
 26
 THS also argues that the district court improperly barred punitive damages by retroactively applying the Minnesota Supreme Court's decision in Independent School Dist. No. 622 v. Keene Corp., 511 N.W.2d 728 (Minn.1994). Under Minnesota law, there is a strong presumption that court decisions will be given retroactive effect. See Hoff v. Kempton, 317 N.W.2d 361, 363 (Minn.1982). In I.S.D. No. 622, the Court held that asbestos contamination cases fall within the existing doctrine that punitive damages are unavailable for injuries to property. 511 N.W.2d at 732. "Punitive damages are to punish the defendant, not compensate the plaintiff who has already been compensated." Hodder, 426 N.W.2d at 837. Thus, there is no injustice to THS in retroactively applying this judicial decision, which could have been predicted from prior Minnesota law.
 
 V.
 
 27
 The judgment of the district court is vacated and the case is remanded for recalculation of the amount of damages. THS's recovery must be reduced by its percentage fault as found by the jury, and the issue of prejudgment interest must be reconsidered in light of the revised award. In all other respects, we affirm.
 
 
 
 [1]
 The court instructed: "In determining whether Northstar was negligent in this case, you may consider whether Northstar had knowledge of Monokote 3 beyond that of the ordinary user or whether because of its knowledge of any potential hazards or costs its purchase of the Northstar Center was unreasonable."
 
 
 [2]
 The decision whether to instruct on primary assumption of risk as well as comparative fault is discretionary. See Rusciano v. State Farm Mut. Auto. Ins. Co., 445 N.W.2d 271, 273-74 (Minn.App.1989). There was no abuse of discretion on the facts of this case. Likewise, the district court did not abuse its discretion by including the feasibility and burden of alternative designs in its design defect instruction, instead of giving a separate instruction on Grace's state of the art defense. See Kallio v. Ford Motor Co., 407 N.W.2d 92, 97 (Minn.1987)
 
 
 [3]
 Grace further argues, in an eleven-line segment of its brief, that the district court's continuing-duty-to-warn instruction imposed a "blanket duty" on manufacturers that is inconsistent with the "special circumstances" rule of Hodder. We reject this contention without addressing whether the instruction in question may have been overly broad. To present an issue of instruction error on appeal following a lengthy trial, appellant should gather, at a single place in the appendix, excerpts from the trial record containing (i) appellant's proposed instruction on the point in question, (ii) any transcribed discussion at the instructions conference, (iii) the instruction actually given, and (iv) appellant's specific objection to the instruction given. Grace's appendix does not include items (ii) and (iv). We decline to search a 6,000 page trial record for them. Instead, we assume that an error not worth the effort to present properly was harmless
 
 
 [4]
 THS argues that the interrogatory was justified because the award was almost exactly 60% of the compensatory damages requested. Grace disputes that contention at length and further argues that the jury's "yes" answer to an ambiguous interrogatory shed no light on the question. We agree that the supplemental interrogatory was highly ambiguous but need not resolve this dispute because the interrogatory was in any event improper
 
 
 [5]
 Grace also argues that the district court erred in admitting an attorney's memorandum discussing a forthcoming study on asbestos exposure. The document was admitted to impeach an author of the study testifying as Grace's expert witness. The witness had never seen the document. The document had insufficient foundation, and it did not directly impeach the witness's testimony. Thus, it was improper extrinsic impeachment. See Fed.R.Evid. 608(b). Though admitting the document was harmless error in this lengthy trial, we grant Grace's July 7, 1994, Petition for Leave To Have Certain Evidence Sealed. However, lacking a proper evidentiary record, we decline to rule on Grace's claims that the document is attorney-client privileged or entitled to work-product immunity