# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2554

_____

|  |  |  |
|---|---|---|
| Christopher Alan Walk, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Starkey Machinery, Inc., | * | District of Minnesota. |
| | * | |
| Defendant/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Continental Clay Company, | * | |
| | * | |
| Third Party Defendant. | * | |

_____

Submitted:  March 8, 1999

Filed:  June 8, 1999

_____

Before FAGG, LAY, and WOLLMAN,[1] Circuit Judges.

_____

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

WOLLMAN, Chief Judge.

In this diversity action, Christopher Alan Walk appeals the district court's[2] adverse grant of summary judgment in his product liability action for personal injuries suffered in a workplace accident.  We affirm.

**I.**

Walk worked for the Continental Clay Company (Continental) as a clay loader or "mixer."  Continental mixes and sells various types of clay for commercial use. Walk began working as a mixer in August of 1995 and was responsible for mixing twenty to thirty batches of clay per day.

A mixer combines dry material and water to form moist clay.  That clay is then carried by conveyor belt into the trough of the pug mill,[3] which was manufactured by Starkey Machinery (Starkey).  The clay is then fed into an auger, which moves the clay down the trough and into a vacuum tube.  When the clay emerges from the vacuum tube, it is bagged and boxed for shipment.  After each batch of clay is finished, the sides of the trough are cleaned and excess clay is removed.  To complete this process, Walk would disengage the auger and remove the protective cover on the trough.  He would then use a scraper to push the excess clay toward the vacuum tube.  He would then engage the auger and scrape the residual clay from between the auger blades.

On May 20, 1996, while cleaning the pug mill trough, Walk's hand became entangled in the auger, which pulled his arm into the machine.  Co-workers and medical

---

[2]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

[3]A pug mill is a clay-working machine that removes the air from clay, shaping it into a final, usable form called a pug.

personnel were unable to remove Walk's arm from the machinery, and it was necessary to amputate the arm at the site of the accident.

Walk filed suit against Starkey, alleging negligence and strict liability based upon the unreasonably dangerous condition of the pug mill. The district court granted Starkey's motion for summary judgment, holding that Walk's claim was barred by the doctrine of primary assumption of the risk.

## II.

We review a grant of summary judgment de novo. See Sperry v. Bauermeister, Inc., 4 F.3d 596, 597 (8th Cir. 1993). In so doing, "[w]e must decide whether the record, when viewed in the light most favorable to [Walk], the nonmoving party, shows that there is no genuine issue of material fact" and that Starkey is entitled to judgment as a matter of law. See id. (citing Cole v. Bone, 993 F.2d 1328, 1331 (8th Cir. 1993)). When the material facts are undisputed, and "reasonable people can draw only one conclusion, assumption of the risk is a question of law for the court." Andren v. White-Rodgers Co., 465 N.W.2d 102, 105 (Minn. Ct. App. 1991). In this diversity case, we review the district court's interpretation of Minnesota law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996).

The sole issue in this appeal is whether the district court properly applied the doctrine of primary assumption of the risk. "[P]rimary assumption of the risk applies when a plaintiff manifests his or her acceptance of the risk and his or her consent 'to undertake to look out for himself and relieve the defendant of the duty.'" Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 586 (8th Cir. 1998) (internal quotations omitted). The doctrine is applicable to inherently risky activities. See T.H.S. Northstar Assocs. v. W.R. Grace and Co., 66 F.3d 173, 176 (8th Cir. 1995). Thus, "[t]he classes of cases involving an implied primary assumption of risk are not many." Id. at 176 (quoting

Springrose v. Willmore, 192 N.W.2d 826, 827 (Minn. 1971)). "The elements of primary assumption of the risk are that the plaintiff 1) knew of the risk; 2) appreciated the risk; and (3) voluntarily chose to accept that risk, even though he or she had a choice to avoid it." Kraft, 136 F.3d at 586 (citing Andren, 465 N.W.2d at 104-05).

In Andren, the court found that primary assumption of the risk applied when the plaintiff lit a cigarette and caused a liquid propane gas explosion. 465 N.W.2d at 106. It found that the plaintiff demonstrated knowledge of the risk by testifying that he knew gas could explode. He appreciated the risk because he acknowledged that he smelled gas prior to the explosion. Finally, the plaintiff voluntarily chose to accept the risk by lighting a cigarette in the gas-filled room when he could have chosen not to smoke. See id. at 105. See also Goodwin v. Legionville Sch. Safety Patrol Training Ctr., Inc., 422 N.W.2d 46, 50 (Minn. Ct. App. 1988) (finding that a volunteer primarily assumed the risk by choosing "to encounter a well-known incidental risk of roofing; slipping and falling off the roof"); cf. Gilbertson v. Tryco Mfg. Co., 492 F.2d 958, 961 (8th Cir. 1974) (finding that pre-Springrose assumption of the risk was not present because plaintiff did not choose to operate a fertilizer-spraying machine with full knowledge that its operation was dangerous).

Walk argues that his case is analogous to those cases in which primary assumption of the risk has been held to be inapplicable. In Peek v. Ostrom, the Minnesota Supreme Court found that an employee did not primarily assume the risk when he injured his hand while attempting to clean a running mill-saw. 120 N.W. 1084, 1085 (Minn. 1909). In finding the doctrine inapplicable, the court stressed plaintiff's limited experience with sawmills. See id. at 1084 (noting that the plaintiff was injured on his first day of work, was twenty years old, and had limited work experience). Because the plaintiff had had such limited experience, the court found that he could not have appreciated the risk. See id. at 1085; see also Kraft, 136 F.3d at 586 (weighing fact that plaintiff had less than one week experience against applying primary assumption of the risk); Johnson v. Southern Minn. Mach. Sales, Inc., 442 N.W.2d

-4-

843, 848 (Minn. Ct. App. 1989). In Johnson, the court found that because the eighteen-year-old inexperienced plaintiff had witnessed his shop teacher and foreman engage in the same activity that eventually injured him, he could not have primarily assumed the risk. See id.

Unlike the plaintiffs in Peek, Kraft, and Johnson, Walk was experienced. He accepted his first job in a clay plant in 1983 and had spent approximately ten years working in different phases of clay production at the time of the accident. He had been working in his current position for more than ten months. Although he had observed his co-workers and supervisor use the same cleaning method, he stated in his deposition that no one had instructed him to use this method to clean the pug mill. He also stated that he knew this method was dangerous, was told that it was dangerous, and that based upon his own experience he believed that the trough could be adequately cleaned with the auger disengaged.

Moreover, Walk knew that the auger was running and that it was capable of injuring him. Indeed, he acknowledged that his fingers had been nicked by the auger blades on at least two earlier occasions while he was cleaning the trough while the auger was running. In Kraft, we stated that the plaintiff's belief that the equipment was disconnected from its power source was the most significant factor making primary assumption of the risk inapplicable. 136 F.3d at 586. Here, it is undisputed that Walk placed his hand in the trough knowing that the auger was engaged and knowing that the moving blades posed a substantial risk of injury to him. Accordingly, the district court did not err in holding that Walk had assumed the risk of such an injury.

The judgment is affirmed.

LAY, Circuit Judge, dissenting.

The majority opinion, in all due respect, misconstrues Minnesota law. The Minnesota courts have drawn a bright line between primary and secondary assumption of risk. The Supreme Court of Minnesota has cautioned that the classes of cases involving an implied primary assumption of the risk are limited and uncommon. See, e.g., Springrose v. Willmore, 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971); Goodwin v. Legionville Sch. Safety Patrol Training Ctr., Inc., 422 N.W.2d 46, 50 (Minn. Ct. App. 1988). Yet in today's decision, the majority obliterates the bright line and has ignored the cautionary language contained in Minnesota law. The pernicious evil of such a precedent will do nothing more than confuse the trial bar of Minnesota.[4]

Minnesota law recognizes two types of assumption of the risk--primary and secondary. Andren v. White-Rodgers Co., 465 N.W.2d 102, 104 (Minn. Ct. App. 1991). Primary assumption of the risk applies where the parties have "voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to those risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent" and the plaintiff is barred from recovery. Olson v. Hansen, 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). Primary assumption of the risk is inapplicable where the defendant's conduct enlarges the inherent risk. Rusciano v. State Farm Mut. Auto Ins. Co., 445 N.W.2d 271, 273 (Minn. Ct. App. 1989). Under Minnesota law, before primary assumption of the risk applies, the plaintiff must first manifest consent to relieve the defendant of the obligation of reasonable conduct, and "[i]t is not every deliberate encountering of a known danger which is reasonably to be interpreted as evidence of such consent." Iepson v. Noren, 308 N.W.2d 812, 815 (Minn. 1981) (quoting W. Prosser, Handbook

---

[4]Today's ruling further serves to denigrate a plaintiff's right to a trial by jury. This right serves as a basic reason that the application of the doctrine of primary assumption of risk is rare and seldom used.

of the Law of Torts § 68 (4th ed. 1971)). Secondary assumption of the risk "is an affirmative defense to an established breach of duty which may only be raised when the plaintiff has voluntarily chosen to encounter a known and appreciated danger created by the negligence of the defendant." Wagner v. Thomas J. Obert Enters., 396 N.W.2d 223, 226 (Minn. 1986) (citation omitted).[5]

In applying the doctrine of primary assumption of risk to the facts of the present case, the majority basically overlooks that "[t]he manifestations of acceptance and consent dictate whether primary or secondary assumption of the risk is applicable in a given case." Andren, 465 N.W.2d at 105. Assumption of the risk differs from contributory negligence, which is based on carelessness, "by being an exercise of intelligent choice." Beckman v. V.J.M. Enters., 269 N.W.2d 37, 39 (Minn. 1978) (citation omitted). Under Minnesota law, to establish assumption of the risk, in either the primary or secondary sense, the defendant must show that the plaintiff (1) had knowledge of the risk; (2) had an appreciation of the risk; and (3) had a choice to avoid the risk but voluntarily chose to chance the risk. Andren, 465 N.W.2d at 104-05.

Walk concedes that the first element of assumption of the risk was met. He admits that he had knowledge of the risk that he could sustain serious injury if his hand came into contact with the auger blades. However, he maintains that neither the second nor third elements were met. Walk contends that he did not appreciate the risk because although he knew that if he stuck his hand into the auger he risked serious injury, he did not appreciate that if his scraper got caught on the trough while he was doing a routine part of his job that the blades could grab his scraper and hand and pull them further into the machine. Nor did he voluntarily assume the risk, he argues, because although the

_____

[5]Secondary assumption of risk is a form of contributory negligence that bars recovery only to the extent the jury finds comparative fault in the plaintiff's assumption of the risk. T.H.S. Northstar Assoc. v. W.R. Grace and Co., 66 F.3d 173, 176 (8th Cir. 1995).

machine could have been turned off before cleaning, he kept it running because that was the way he was taught to do it, and the way that he and his supervisors had been doing it for years.

This court and Minnesota courts have found that primary assumption of the risk did not apply in situations where the plaintiff had performed the injury-causing action in the past without incident or had seen others do it without incident. First, in Piotrowski v. Southworth Prods. Corp., 15 F.3d 748 (8th Cir. 1994), this court found that secondary rather than primary assumption of risk was involved where the plaintiff jumped on top of a wet lift table to get the wheels rolling, fell from the table and suffered permanent injuries. We held that the plaintiff "did not have actual knowledge of a known risk and he did not make the choice to chance the risk rather than avoid it. [Plaintiff] and other employees had similarly stood or stomped on the lift table without incident for seven months." Id. at 753.

In another case, Kraft v. Ingersoll-Rand Co., 136 F.3d 584 (8th Cir. 1998), this court reversed the district court's grant of summary judgment where an employee of a sugar beet processor brought suit against the manufacturer of a beet piler after she was injured while standing inside a gap in the machine that should have been covered. Although the court noted the plaintiff's inexperience, the court also considered the fact that the plaintiff had placed her hands and a shovel into this gap before without incident. Id. at 586.

Similarly, the Minnesota Court of Appeals has held that primary assumption of the risk did not apply where a plaintiff cut his fingers off while using a table saw without a blade guard to make freehand cuts. Johnson v. Southern Minn. Mach. Sales, Inc., 442 N.W.2d 843, 848 (Minn. Ct. App. 1989). In so holding, the court emphasized the fact that the plaintiff was performing the cutting in the same way his foreman had instructed him and in the same way he had seen his foreman and former shop teacher make freehand cuts. Id.

Finally, the Supreme Court of Minnesota found that secondary rather than primary assumption of risk was applicable in a case where a group of young adults attended races at Brainerd International Raceway (BIR). Rieger v. Zackowski, 321 N.W.2d 16 (Minn. 1982). After the races, the plaintiff, along with several of his friends and other spectators, jumped a fence to enter the racetrack after the races had concluded and non-racers were driving their cars around the track. Id. at 23. Plaintiff was hit by one of the cars and severely injured. Id. at 19. BIR argued that primary assumption of the risk was applicable to bar recovery because the plaintiff had jumped the fence and entered the racetrack. The court rejected this argument and found that secondary assumption of risk was more applicable to the facts, noting that the plaintiff saw others jump the fence and enter the racetrack. Id. at 23. The court found that BIR had breached its duty to prevent access to the racetrack. Id. at 24.

In granting summary judgment in the present case, the district court emphasized that Walk could have avoided the danger because Walk's employer did not criticize its employees for turning off the machine to clean it: "Continental did not criticize its employees for turning off the power to the auger. . . . There is no testimony that the employer required Mr. Walk to clean the pug mill while the auger was engaged." Walk v. Starkey Machinery, Inc., No. 96CIV1052 (D. Minn. May 7, 1998) (order granting summary judgment).

Again, the Supreme Court of Minnesota has considered a similar fact and rejected the application of primary assumption of the risk. In Peek v. Ostrom, 107 Minn. 488, 120 N.W. 1084 (1909),[6] the court held that assumption of the risk was inappropriate and reversed the trial court's grant of judgment notwithstanding the verdict for the defendant where the plaintiff's hand was cut by a splitting saw while he cleaned the chute that surrounded the revolving saw. The court, however, noted that

---

[6]This case was decided before Minnesota separated assumption of the risk into two separate doctrines.

the plaintiff was inexperienced, had not been instructed <u>not</u> to clean out the chute, and that others who had operated the saw found it necessary to clean the area around the saw in the same way. <u>Id.</u> at 490, 120 N.W. at 1084. The court emphasized that the plaintiff did not appreciate the danger. <u>Id.</u>

Although several of the cases discussed above emphasized the plaintiff's inexperience when finding primary assumption of risk inapplicable, the fact that Walk was experienced in this case should not necessarily mean that he appreciated the risk and voluntarily chose to undertake it. If anything, his experience in cleaning these machines would reinforce that it was proper to clean them while they were running because it was his and others' routine method of performing the task. Furthermore, whether one is sufficiently "experienced" to appreciate a risk is a factual issue, not a legal one; this issue is best left to the trier of fact and as such belongs exclusively to a jury.

In light of these cases, it should be obvious that the majority's application of primary assumption of risk is not faithful to Minnesota law. Furthermore, its application of this doctrine slights the factual circumstances under which the plaintiff lost his arm. The plaintiff did not place his hand and arm directly into the auger blades. This accident would not have occurred if his scraper, which he was using to clean the blades, had not caught on the trough. This was not a risk that plaintiff could anticipate or in any way appreciate. Yet, the majority urges that the plaintiff should have fully appreciated the risk involved. The risk involved was not directly placing his arm into the machinery, but rather was the inadvertent act whereby the scraper he was holding got caught in the trough and then pulled his hand and arm into the machinery.

Although Walk was experienced and knew he could have turned the auger off before he cleaned the machine, Walk had left the auger running while performing this

task in the past without incident.[7] Cleaning the machine was part of his routine, daily tasks. Furthermore, his co-worker and supervisor also cleaned the machine with the auger blades running without incident. As such, it does not appear that Walk released the manufacturer of its duty or voluntarily consented to the risk of having his arm entangled by cleaning the machine with a scraper while it was running, as he and others had done routinely in the past. Under Minnesota law, the district court should have allowed a jury to decide whether Walk assumed the risk in the secondary sense and, if so, to apportion fault.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]The district court found and the majority agrees that Walk appreciated the risk of getting caught in the auger because he had experienced close calls in the past when he dropped the scraper into the mill. Walk argues in his brief, however, that his accident did not occur because he dropped his scraper. Walk claims he did not drop his scraper, but rather, that the scraper got caught on a groove in the trough. He maintains that he did not appreciate this risk.